IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| SHARYEL PERRY, | * |
|     Plaintiff, | * |
| vs. | * |
| |     CASE NO. 4:16-CV-135 (CDL) |
| METROPOLITAN LIFE INSURANCE COMPANY, | * |
| | * |
|     Defendant. | * |
| | * |

O R D E R

Plaintiff Sharyel Perry was insured under a long term disability insurance policy that Defendant Metropolitan Life Insurance Company ("MetLife") issued to her former employer, Synovus Financial Corporation, for the benefit of its employees. Perry alleges that she became disabled in January 2014. MetLife initially agreed to pay Perry disability benefits but later terminated her benefits. Perry appealed, contending that MetLife made factual and procedural errors that resulted in the improper termination of her disability benefits. Perry asserts that MetLife did not render a timely decision on her appeal, and she filed this action for breach of contract under the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. MetLife filed a Motion to Dismiss (ECF No. 11), contending that Perry did not exhaust her administrative remedies before filing suit.

MetLife asserts that Perry's Complaint should be dismissed for failure to exhaust administrative remedies. MetLife's present motion is not a motion for judgment as a matter of law based on the administrative record. Rather, the present Motion to Dismiss is based on the allegations in Perry's Complaint and documents attached to MetLife's Motion to Dismiss. MetLife contends that the Complaint and MetLife's documents establish that Perry failed to exhaust her administrative remedies.

## FACTUAL BACKGROUND

Perry was employed by Synovus Financial Corporation, and she was covered under a long term disability insurance policy issued to Synovus for the benefit of its employees. Compl. ¶ 8, ECF No. 1. It is undisputed that Perry sought disability benefits under the MetLife Policy and that MetLife initially agreed to pay Perry disability benefits starting in April 2014. In May 2015, however, MetLife terminated Perry's disability benefits. *Id.* ¶ 17; Def.'s Suppl. Mem. of Law in Supp. of Mot. to Dismiss Ex. B, Letter from Dyanne Roberts to Sharyel Perry (May 13, 2015), ECF No. 26-2 ("Denial Letter"). Perry asserts that there had not been "any improvement in her physical condition or her ability to perform her prior job duties at Synovus." Compl. ¶ 17.

The Policy states that an insured like Perry "must submit [her] appeal to MetLife at the address indicated on the claim

form within 180 days of receiving MetLife's decision." Def.'s Suppl. Mem. of Law in Supp. of Mot. to Dismiss Ex. A, MetLife Group Policy No. 153679-1-G, ECF No. 26-1 at 73 ("Policy"). The Policy further states that the appeal "must be in writing and must include at least the following information: Name of Employee; Name of the Plan; Reference to the initial decision; An explanation why you are appealing the initial determination." *Id.* And it states: "As part of your appeal, you may submit any written comments, documents, records, or other information relating to your claim." *Id.*

The Denial Letter MetLife sent to Perry states that Perry "may appeal [the denial] decision by sending a written request for appeal to MetLife Disability" via mail, fax, or email "within 2417 [sic] after [she] receive[s] th[e] denial letter." Denial Letter 3. The letter further states that Perry should "include in [her] appeal letter the reason(s) [she] believe[s] the claim was improperly denied." *Id.* It also states that Perry may "submit any additional comments, documents, records or other information relating to [her] claim that [she] deem[s] appropriate for [MetLife] to give [her] appeal proper consideration." *Id.*

There is no dispute that Perry timely appealed the termination of her disability benefits even though the Denial Letter stated that the appeal was due "within 2417" after Perry

3

received the Denial Letter and did not explain that the Policy required the appeal to be submitted within 180 days. On October 28, 2015, 168 days after MetLife mailed Perry the Denial Letter, Perry sent a detailed Appeal Letter to MetLife via facsimile and mail. Compl. ¶ 18; Pl.'s Resp. to Def.'s Mot. to Dismiss Ex. A, Letter from Michael Grabhorn to MetLife Disability Appeal Unit (Oct. 28, 2015), ECF No. 27-1 ("Appeal Letter"). The Appeal Letter included Perry's name, Perry's claim number, the name of her employer, and a detailed explanation of Perry's "Issues with MetLife's Termination Decision." *Id.* at 1-5. MetLife acknowledges that it received the Appeal Letter via facsimile on October 28, 2015. Def.'s Reply Br. in Supp. of Mot. to Dismiss 2, ECF No. 29. MetLife asserts that it received Perry's CD of supporting documentation via mail on November 4, 2015, 175 days after MetLife sent Perry the Denial Letter.[1]

MetLife contends that on November 12, 2015, its appeal specialist confirmed receipt of Perry's appeal and "advised

---

[1] In support of this assertion, MetLife points to an unauthenticated claim activity chart excerpt, which MetLife provided without explanation. Def.'s Suppl. Mem. of Law in Supp. of Mot. to Dismiss Ex. C, Print Claim Activity Excerpt, ECF No. 26-3. Even if the Court considered this document without converting MetLife's motion to dismiss into a summary judgment motion, *see Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005), the chart excerpt does not establish what MetLife says it does. The chart excerpt appears to be pages 261 and 262 of a 298-page claim activity chart related to a claim number that begins with 631403177083. It contains entries for "Incoming Mail – Appeal" on "Comment Date" October 29, 2015 and "Comment Date" November 5, 2015. It is not clear from the face of the chart when MetLife received the CD from Perry.

[Perry] that MetLife may request an extension if there are special circumstances requiring an extension of time." Def.'s Reply Br. 2. MetLife did not point to any evidence in support of this assertion. A MetLife employee sent Perry's attorney a letter dated December 8, 2015 stating that the employee had been assigned to Perry's appeal. Pl.'s Resp. to Def.'s Mot. to Dismiss Ex. B, Letter from Jill Brown to Michael Grabhorn (Dec. 8, 2015), ECF No. 27-2. That letter did not request an extension of time for MetLife to consider Perry's appeal, and it did not request any information from Perry's attorney. On December 14, 2015, MetLife's employee sent Perry's attorney a letter stating that MetLife needed an independent medical examination to complete its review of Perry's claim. Def.'s Suppl. Mem. of Law in Supp. of Mot. to Dismiss Ex. D, Letter from Jill Brown to Michael Grabhorn (Dec. 14, 2015), ECF No. 26-4 ("Extension Letter"). The Extension Letter further stated that Perry's appeal had been placed in a "45 day tolling period" and that MetLife would continue with its review of Perry's claim once it received the independent medical examination report or the 45 day tolling period expired. *Id.*

The Policy states that MetLife will notify an insured "in writing of its final decision within a reasonable period of time, but no later than 45 days after MetLife's receipt of [the insured's] written request for review, except that under special

5

circumstances MetLife may have up to an additional 45 days to provide written notification of the final decision." Policy, ECF No. 26-1 at 73. The Policy further states that if "an extension is required, MetLife will notify [the insured] *prior to the expiration of the initial 45 day period*, state the reason(s) why such an extension is needed, and state when it will make its determination." *Id.* (emphasis added).

DISCUSSION

Under the Policy and ERISA's regulations, once Perry submitted an appeal, MetLife had "45 days to resolve that appeal, with one 45-day extension available for 'special circumstances (such as the need to hold a hearing).'" *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 613 (2013) (quoting 29 C.F.R. §§ 2560.503-1(i)(1)(i), (i)(3)(i)); *accord* Policy, ECF No. 26-1 at 73. If Perry "fail[ed] to submit necessary information," then MetLife's "time for resolving [the] appeal [could] be tolled again." *Heimeshoff*, 134 S. Ct. at 613 (quoting 29 C.F.R. § 2560.503-1(i)(4)); *accord* Policy, ECF No. 26-1 at 73.

If MetLife failed "to meet its own deadlines under these procedures, [Perry] 'shall be deemed to have exhausted the administrative remedies.'" *Heimeshoff*, 134 S. Ct. at 613 (quoting 29 C.F.R. § 2560.503-1(*l*)). "Upon exhaustion of the internal review process, [Perry] is entitled to proceed

6

immediately to judicial review . . . ." *Id.* In other words, if MetLife did not timely resolve Perry's appeal, then Perry is deemed to have exhausted her administrative remedies, and she was permitted to file this action. The parties' dispute thus hinges on two questions: (1) when did Perry appeal the termination of her benefits? and (2) did MetLife substantially comply with ERISA's deadlines for resolving that appeal? The Court will evaluate each question in turn.

**I.   When Did Perry File Her Appeal?**

The Policy states that MetLife "will conduct a full and fair review of [the insured's] claim" after it "receives [the insured's] written request appealing the initial determination." Policy, ECF No. 26-1 at 73. The Policy also states that MetLife will notify the insured "in writing of its final decision within a reasonable period of time, but no later than 45 days after MetLife's receipt of [the insured's] written request for review." *Id.* Thus, the Policy's review deadlines are tied to MetLife's receipt of the insured's written request for review.

It is undisputed that Perry sent MetLife a seven-page Appeal Letter via facsimile on October 28, 2015. That letter included Perry's name, Perry's claim number, the name of her employer, and a detailed explanation of Perry's contention that MetLife wrongfully terminated her disability benefits. MetLife does not dispute that it received Perry's Appeal Letter by

7

facsimile on October 28, 2015.  MetLife argues, however, that MetLife did not actually receive Perry's appeal until November 4, 2015, which is when MetLife claims that it received Perry's CD of supporting information via mail.[2]

MetLife did not point to any provision in the Policy to support its position that an appeal is not deemed filed until an insured provides documents in support of the appeal.  The Policy simply states that an appeal "must be in writing and must include at least the following information: Name of Employee; Name of the Plan; Reference to the initial decision; An explanation why you are appealing the initial determination."  *Id.*  The Policy does state that an insured "may submit any written comments, documents, records, or other information relating to [her] claim" as part of her appeal.  *Id.*  But the Policy does not state that an insured's written request for review must include supporting documents in order to be deemed "received."  Moreover, ERISA's regulations state that "the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, *without regard to whether all the information necessary to make a benefit determination on review accompanies the filing*."  29

---

[2] Again, MetLife did not point to any evidence clearly stating when it received the CD, but the Court assumes for purposes of this motion that MetLife received the CD containing supporting documentation on November 4, 2015.

8

C.F.R. § 2560.503-1(i)(4) (emphasis added). In summary, nothing in the Policy or ERISA's regulations required Perry to submit her supporting documentation in order for her appeal to be deemed "received." The Court thus concludes that MetLife received Perry's written request for review when MetLife received Perry's Appeal Letter via facsimile on October 28, 2015.

**II. Did MetLife Substantially Comply with ERISA's Deadlines for Resolving Perry's Appeal?**

It is undisputed that MetLife did not render a decision on Perry's appeal by December 12, 2015, which is forty-five days after MetLife received Perry's appeal on October 28, 2015. It is also undisputed that MetLife did not seek, in writing or otherwise, an extension of time to review Perry's appeal prior to December 12, 2015. Thus, under the Policy and ERISA's regulations, MetLife failed to resolve Perry's appeal by the applicable deadline. MetLife nonetheless argues that it substantially complied with ERISA's regulations by sending Perry a letter dated December 14, 2014 informing Perry that MetLife needed an independent medical exam and an extension of time to complete the appeal review.

Neither party pointed to any authority from the Eleventh Circuit Court of Appeals regarding an ERISA plan administrator's substantial compliance with ERISA deadlines, and the Court found

9

none.[3] The courts that have addressed the issue generally apply a substantial compliance standard to ERISA deadline requirements. The courts "overlook administrators' failure to meet certain procedural requirements when the administrator has substantially complied with the regulations and the process as a whole fulfills the broader purposes of ERISA and its accompanying regulations." *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1317 (10th Cir. 2009) (quoting *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 634 (10th Cir. 2003)). "[A]n administrator who fails to render a timely decision can only be in substantial compliance with ERISA's procedural requirements if there is an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed as to the status of the claim and the

---

[3] MetLife did point to two Eleventh Circuit cases on substantial compliance with other types of ERISA regulations. *See Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1317-18 (11th Cir. 2000) (finding no abuse of discretion where the district court declined to waive the plan participant's exhaustion requirement when the plan technically violated ERISA regulations on establishing a reasonable claims procedure but did not deny "meaningful access to an administrative remedy procedure through which [the plan participants] may receive an adequate remedy" and thus substantially complied with ERISA's requirements); *Counts v. Am. Gen. Life & Acc. Ins. Co.*, 111 F.3d 105, 108-09 (11th Cir. 1997) (finding no abuse of discretion where the district court declined to excuse the plan participant's failure to exhaust administrative remedies because the plan's termination letter substantially complied with ERISA notice requirements, even though it was technically deficient). Neither *Perrino* nor *Counts* addresses substantial compliance in the context of a plan administrator missing its deadline to resolve an appeal, which results in the plan participant being "deemed to have exhausted the administrative remedies." *Heimeshoff*, 134 S. Ct. at 613 (quoting 29 C.F.R. § 2560.503-1(*l*)).

kinds of information that will satisfy the administrator." *Id.* (quoting *Gilbertson*, 328 F.3d at 636. "Pursuant to this test, a plan administrator is in substantial compliance with a deadline if the delay is: '(1) inconsequential; and (2) in the context of an on-going, good-faith exchange of information between the administrator and the claimant.'" *Id.* (quoting *Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1173-74 (10th Cir. 2004)).

In one case MetLife cited to support its argument on this point, the district court found that the plan administrator's "decision was delayed pending the receipt of additional information, either from [the insured's] family, [the insured's] doctors, or from [the insured] herself." *Lundsten v. Creative Cmty. Living Servs., Inc. Long Term Disability Plan*, No. 13-C-108, 2014 WL 2440716, at *5 (E.D. Wis. May 30, 2014). The *Lundsten* court also noted that during the review process, the insured received six letters regarding the status of her appeal and had several telephone conversations about her appeal with the insurer's representatives. *Id.* Thus, the *Lundsten* court concluded that there was "an on-going, good faith exchange of information, and the resulting delay was completely inconsequential." *Id.* In another case MetLife cited, the district court noted that although the insurer's "decision was not within the regulatory deadline," the record revealed that it

11

"was engaged in a good faith attempt to comply with the deadlines," attempted to keep the insured informed regarding the delay, and "did not ignore [the insured's] appeal until the last possible minute."  *Seger v. ReliaStar Life*, No. 3:04 CV 16/RV/MD, 2005 WL 2249905, at *11 (N.D. Fla. Sept. 14, 2005).

Here, MetLife's delay in seeking an extension of time to review Perry's appeal was inconsequential.  But that is only one of the two requirements for substantial compliance.  The problem for MetLife is that it did not point to any evidence that it was engaged in an on-going exchange of information with Perry that justified its delay in resolving her appeal.  MetLife did not point to any evidence that it asked Perry or her doctors for additional information before it sent the Extension Letter, and MetLife did not point to any evidence that the delay was caused because Perry or her doctors failed to respond to MetLife's requests.  And, MetLife did not point to any evidence that it communicated with Perry about a potential delay of her appeal before it sent the Extension Letter.

Instead, based on what MetLife submitted to the Court, MetLife acknowledged receipt of Perry's appeal on November 12, 2015, assigned the appeal to another appeal specialist on December 8, 2015, and did nothing to seek additional information from Perry or her doctors before December 14, 2015.  The present record simply does not establish that MetLife engaged in good

12

faith efforts to complete the administrative process. Thus, based on the present record, MetLife did not substantially comply with ERISA's deadlines. Perry is therefore deemed to have exhausted administrative remedies, and she is entitled to proceed to judicial review.

## CONCLUSION

For the reasons set forth above, MetLife's Motion to Dismiss (ECF No. 11) is denied. Within twenty-one days of the date of this Order, the parties shall confer and submit a joint proposed scheduling order that sets forth briefing deadlines for the parties to seek judgment on the administrative record. If either party takes the position that discovery is permitted and warranted in this action, the party shall provide authority for this position, explain what discovery is needed, and propose a discovery schedule.

IT IS SO ORDERED, this 30th day of August, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA